# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **KENNETH MCCAY, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:01-CV-0230-VEH** |
| | } | |
| **SIEMENS CORPORATION, et al.,** | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiffs initiated this litigation on January 23, 2001.  (Doc. #1).  The four named plaintiffs are Kenneth McCay, John Brannon, Clifford Hawthorne, and Paul Jones.  Pending before the court are:  (i) Defendants CBS Corporation ("CBS") and Westinghouse Pension Plan's (the "Westinghouse Plan") (collectively the "CBS Defendants") Motion to Dismiss (Doc. #8) filed on March 21, 2001; (ii) Defendants Siemens Corporation ("Siemens") and Siemens Westinghouse Retirement Plan for Union Employees' (the "Siemens Plan") (collectively the "Siemens Defendants") Motion for Summary Judgment (Doc. #21) filed on April 24, 2001; and (iii) Plaintiffs' Motion for Partial Summary Judgment (Doc. #40) filed on March 15, 2002.

On July 16, 2004, nearly three and one-half years after its inception, the

undersigned inherited this case by way of reassignment.  (Doc. #56).  In response to the court's order (Doc. #58) entered on November 18, 2004, the parties summarized their positions concerning the issues raised in their dispositive motions (Docs. #60-#64).  As explained below, the court finds that no material facts are in dispute and that Defendants are entitled to judgment as a matter of law.  Accordingly, Plaintiffs' case is due to dismissed.

## II.     PLAINTIFFS' ALLEGATIONS[1]

Plaintiffs are former employees of the Power Generation Business Unit of Westinghouse (later known as CBS).  On August 19, 1998, Westinghouse sold the Power Generation Business Unit to an affiliate of Siemens.  In connection with this sale, Plaintiffs became employees of Siemens for the balance of August (and beyond), but remained as participants in the Westinghouse Plan.  The Westinghouse Plan provided for "Permanent Job Separation" ("PJS") benefits.

Effective September 1, 1998, Siemens adopted the Siemens Plan, which was similar to the Westinghouse Plan, but no longer included the same PJS benefits. (Doc. #47 at Ex. B at Ex. 1).   In March of 1999, Plaintiffs were laid off from work by Siemens on account of the closure of the Power Generation Business Unit.

---

[1]The court  uses Plaintiffs' allegations by way of background as the nature of its opinion on summary judgment does not necessitate a conventional statement of undisputed and/or disputed facts.

Relating to their dismissal, Plaintiffs seek to recover PJS benefits from both CBS and

Siemens under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§§ 1001, *et seq.*[2]

## III.   STANDARD ON SUMMARY JUDGMENT[3]

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

---

[2]By no longer actively pursuing them, Plaintiffs have conceded their age discrimination claims.  (Doc. #23 at 12 § IV ("We are not insisting on the age discrimination claim.")).

[3]While procedurally, the CBS Defendants have chosen to file their dispositive motion under a different rule of Federal Civil Procedure than Rule 56, substantively, the parties are in agreement that the facts are not in dispute and that the issues before the court are ripe for a determination as a matter of law.  The court's review of a dispositive motion filed on a Rule 12(b)(6) basis is acceptable under certain circumstances.  *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368-69 (11th Cir.1997) (recognizing that appropriate documents for court to consider when ruling on a Rule 12(b)(6) motion include complaint, any attachments, and any additional documents referenced therein that "are central to the plaintiff's claim") (citation omitted).  However, because the court is considering matters outside of the parties' pleadings and documents central to them, the appropriate procedural measure for the court to take is to convert the CBS Defendants' Motion to Dismiss to one for summary judgment.  *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").

and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[4]   The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor

---

[4]Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996).  The court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998).

of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party

5

satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV.   ANALYSIS

29 U.S.C. § 1132 sets forth the civil enforcement provisions of ERISA, and

states in part:

> (a) Persons empowered to bring a civil action
> A civil action may be brought--
> > (1) by a participant or beneficiary--
> > > (A) for the relief provided for in
> > > subsection (c) of this section, or
> > > (B) to recover benefits due to him
> > > under the terms of his plan, to enforce
> > > his rights under the terms of the plan,
> > > or to clarify his rights to future benefits
> > > under the terms of the plan;
> > (2) by the Secretary, or by a participant, beneficiary or
> > fiduciary for appropriate relief under section 1109 of this
> > title;[5]
> > (3) by a participant, beneficiary, or fiduciary (A) to enjoin
> > any act or practice which violates any provision of this
> > subchapter or the terms of the plan, or (B) to obtain other
> > appropriate equitable relief (i) to redress such violations or
> > (ii) to enforce any provisions of this subchapter or the
> > terms of the plan;

29 U.S.C. § 1132(a).  Further, 29 U.S.C. § 1109 provides:

> (a) Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon
> fiduciaries by this subchapter shall be personally liable to make good to
> such plan any losses to the plan resulting from each such breach, and to

---

[5]"29 U.S.C. § 502(a)(2) refers to appropriate relief under § 1109 of Title 29, the codified version of § 409 of ERISA."  *Herman v. South Carolina Nat. Bank*, 140 F.3d 1413, 1419 n.11 (11th Cir.1998).

restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

Although not expressly stated in their Complaint, based upon the briefs, from an enforcement standpoint, Plaintiffs seemingly premise their ERISA claims on § 1132(a)(3) and § 1132(a)(1)(B).

A.      Section 1132(a)(3)

In a case decided by the Fourth Circuit Court of Appeals that is not directly on point, but still is highly instructive as to the proper scope of § 1132(a)(3), an employer attempted to sue Blue Cross for breach of fiduciary duty under §§ 1132(a)(2)-(3) of ERISA.  *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc.*,102 F.3d 712, 714 (4th Cir. 1996).   In reversing the trial court's decision, the *Coyne* court held unequivocally that:

ERISA does not afford fiduciaries a cause of action for benefits.  ERISA is a "comprehensive and reticulated statute" which does not provide remedies other than those expressly set forth by Congress.  We therefore decline Coyne & Delany's invitation to read into the more general language of ERISA section 502(a)(3) an action for fiduciaries which Congress saw fit to deny them under the specific terms of section 502(a)(1)(B).

8

*Coyne*,102 F.3d at 713 (internal citation omitted).  More specifically, in disallowing the employer to proceed under either civil enforcement provision, the court reasoned:

> Although Coyne directs our attention to sections 502(a)(2) and (a)(3), the analysis of who may recover benefits under ERISA must begin with section 502(a)(1)(B), the section which specifically provides a cause of action for benefits.  Coyne's description of its claim as one for breach of Blue Cross' fiduciary duty does not alter the fact that it is seeking medical benefits which it claims are owed to Tyree. To permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading; indeed every wrongful denial of benefits could be characterized as a breach of fiduciary duty under Coyne's theory.

*Coyne*,102 F.3d at 714.

As it relates to § 1132(a)(3), the *Coyne* court, relying in part upon a decision issued by the Fifth Circuit, reached the conclusion that the provision is "intended to address violations affecting a plan more generally" and does not extend to "wrongs suffered by individual [beneficiaries or participants.]"  Instead, the appropriate civil enforcement provision to use for obtaining benefits due under a plan is § 1132(a)(1)(B):

> As the Fifth Circuit put it, "Section 502(a)(3) provides for relief apart from an award of benefits due under the terms of a plan. When a beneficiary [or a participant] simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B)." *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1335 (5th Cir.1992).

*Coyne*, 102 F.3d at 715; *see also Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1993)

9

("The plain language of [§ 502(a)(3)] does not provide for monetary relief and a review of the legislative history confirms that Congress did not contemplate that this phrase would include an award of money damages."); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 825 (1st Cir. 1988) ("[W]e conclude, as have the Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits, that extra-contractual damages are unavailable under § 1132(a)(3).  We give our transcontinental imprimatur to the Ninth Circuit's simple, appealing expression of that conclusion:  '[I]t appears that Congress used the word 'equitable' [in § 1132(a)(3)] to mean what it usually means--injunctive or declaratory relief.'") (footnotes omitted).

Similar to the *Coyne* case, the heart of this lawsuit is about Plaintiffs' claim for PJS benefits.  While admittedly, unlike the *Coyne* case, this lawsuit is not limited to a claim of individual benefits for a single employee, it does seek to recover what could otherwise be sought under § 1132(a)(1)(B).  Such an expansive reading of § 1132(a)(3) would be contrary to the United States Supreme Court's interpretation of ERISA's civil enforcement provisions.  *Coyne,* 102 F.3d at 716 ("[I]n finding that section 502(a)(3) was a catchall provision, however, the Court stated that it provides 'equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.'") (quoting *Varity Corp. v. Howe,* 516 U.S. 489 (1996)).  As the Supreme Court instructed in *Varity* regarding the parameters of § 1132(a)(3):

10

> We should expect the courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others."  Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

516 U.S. at 515 (internal and other citations omitted).

Moreover, earlier in its analysis, the Supreme Court described ERISA's civil enforcement scheme to include a "safety net" based in part upon the presence of § 1132(a)(3):

> Such a reading is consistent with § 502's overall structure. Four of that section's six subsections focus upon specific areas, *i.e.*, the first (wrongful denial of benefits and information), the second (fiduciary obligations related to the plan's financial integrity), the fourth (tax registration), and the sixth (civil penalties). The language of the other two subsections, the third and the fifth, creates two "catchalls," providing "appropriate equitable relief" for "any" statutory violation. This structure suggests that these "catchall" provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.

*Varity*, 516 U.S. at 512.  Therefore, critical to the Supreme Court's decision in *Varity* to allow for individual breach of fiduciary duty claims under § 1132(a)(3) was the express recognition that the plaintiffs, in that particular case, had no other means of redress under ERISA.  *Varity*, 516 U.S. at 515.  ("They must rely on the third subsection [*i.e.*, § 1132(a)(3)] or they have no remedy at all.").  *Cf. Sanson v. General*

11

*Motors Corp.*, 966 F.2d 618, 622 (11th Cir. 1992) (pointing out that "argument that ERISA provides inadequate remedy is insufficient reason to overcome language of statute") (citing *First Nat'l Life Ins. v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1550 (11th Cir.1992)).

B.      Section 1132(a)(1)(B)

Section 1132(a)(1)(B) allows not only for the recovery of benefits, but also to enforce rights under the terms of a plan.   Plaintiffs maintain that both the Westinghouse and Siemens Plans violated their rights as it pertains to PJS benefits. More specifically, Plaintiffs maintain that CBS violated the anti-cutback provision of ERISA when it ended PJS benefits effective August 18, 1998, and that Siemens violated the section because it did not reinstate the benefits. *See* 29 U.S.C. § 1054(g). Section 1054(g) of ERISA provides:

(g) Decrease of accrued benefits through amendment of plan

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.

(2) For purposes of paragraph (1), a plan amendment which has the effect of--

(A) eliminating or reducing an early retirement benefit or
a retirement-type subsidy (as defined in regulations), or
(B) eliminating an optional form of benefit,

12

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. The Secretary of the Treasury shall by regulations provide that this paragraph shall not apply to any plan amendment which reduces or eliminates benefits or subsidies which create significant burdens or complexities for the plan and plan participants, unless such amendment adversely affects the rights of any participant in a more than de minimis manner. The Secretary of the Treasury may by regulations provide that this subparagraph shall not apply to a plan amendment described in subparagraph (B) (other than a plan amendment having an effect described in subparagraph (A)).

29 U.S.C. § 1054(g).

   1. No Evidence of Merger

 Plaintiffs' claims against Defendants fail as a matter of law for numerous reasons. One, Plaintiffs have failed to adequately demonstrate a material issue of disputed fact over (much less affirmatively shown the existence of) a consolidation of any assets occurring between the CBS and Siemens Plans. Instead, the evidence in the record establishes that the CBS and Siemens Plans are separate entities with independent sources of funding and that no transfer of any assets between them took place. (Doc. #47 at Ex. B ¶ 2; *id* at Ex. C §§ 12-13; Doc. #19 at Ex. 1 §§ 12-13). Similarly, the record reflects that the sponsorship and administration of each respective Plan are unrelated. (Doc. #47 at Ex. C at 2, 45). As a result, Plaintiffs'

arguments that liability under ERISA exists because of the merged status of the CBS and Siemens Plans are without merit, including the purported violations of the ERISA spinoff and anti-cutback rules. *See* 29 U.S.C. §§ 1058, 1054(g), respectively. Similarly, the reasoning contained in the spinoff case of *Bellas v. CBS Corporation*, 221 F.3d 517 (3d Cir. 2000), upon with Plaintiffs so heavily rely, has no bearing in this litigation.

      2.    No Entitlement to PJS Benefits Under the Westinghouse Plan

Two, as a matter of law and reviewing the decision on a *de novo* basis, the court concludes that the determination that Plaintiffs fail to satisfy the criteria that would even entitle them to PJS benefits is a correct contractual interpretation. *See Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004) (setting forth six-step model for use in judicially reviewing virtually all ERISA denials and explaining that analysis appropriately ends when court concludes that administrative decision is correct applying *de novo* review). Under the Westinghouse Plan, PJS benefits are appropriate upon "the termination of the employment of an Employee with an Employer, Affiliated Entity, or Excluded Unit  . . ." without the offer of "continued employment" by "a successor employer which is neither an Employer, Affiliated Entity, nor an Excluded Unit." (Doc. #47 at Ex. C § 1(34)). The facts

establish that Plaintiffs' employment was not terminated by CBS; rather, Siemens, Plaintiffs' subsequent employer, terminated their employment. Accordingly, as a matter of law, no qualifying event for PJS benefits occurred under the Westinghouse Plan in March of 1999. *See Gritzer v. CBS, Inc.*, 275 F.3d 291, 297 (3d Cir. 2002) (determining that discharge by company not defined as "employer" is "fatal" to claim for PJS benefits by former CBS employee). Alternatively, the ending of Plaintiffs' employment with CBS in August of 1998 was not a qualifying event because Plaintiffs had (and indeed all accepted) an offer of "continued employment" with Siemens.

        3.      Plaintiffs' Reliance Upon Other Westinghouse Plan Provisions

Three, as explained by the CBS Defendants in their summary brief (Doc. #62 at 4-5), Plaintiffs' efforts to otherwise create an obligation for the payment of PJS benefits under alternative provisions of the Westinghouse Plan are flawed for many of the same reasons explained above and are entirely unpersuasive. One argument advanced by Plaintiffs is that § 18(B) of the Westinghouse Plan creates liability for the PJS benefits. Section 18(B) of the Westinghouse Plan provides that "the rights of affected participants to benefits accrued under the Plan shall be nonforfeitable to the extent funded." (Doc. #47 at Ex. C). This provision is ineffective because as

explained above, Plaintiffs never suffered a permanent job separation, and therefore they never received any funded PJS benefits.   Accordingly, § 18(B) of the Westinghouse Plan never was triggered.

Another position offered by Plaintiffs is a provision that amended the Westinghouse Plan which Plaintiffs contend creates joint liability for PJS benefits in the event that Siemens terminates their employment.  However, the amendatory language on which Plaintiffs rely does not support their theory and in fact expressly excludes the CBS Defendants from any such liability:  "the Purchaser Pension Plan shall be solely responsible for [and the Westinghouse Pension] Plan shall not provide for . . . any benefits pursuant to Section 19 of the [Westinghouse] Plan and the corresponding provision of the Purchaser Pension Plan . . . with respect to any PGBU Employee who retires or terminates his employment with the Purchaser and its Affiliates after the Closing Date."  (Doc. #47 at Ex. G at Annex II § 3(b)).

The final basis under which Plaintiffs seek to impose liability for the PJS benefits relates to § 18(C) of the Westinghouse Plan.  Section 18(C) is triggered only "for a period of twenty-four (24) months following a Change in Control."  (Doc. #47 at Ex. C).  However, the undisputed facts do not support a conclusion that a "Change in Control" took place within the meaning of the Westinghouse Plan:  Siemens only purchased assets of a single business unit of CBS;  Siemens did not merge with

Westinghouse;  Siemens did not buy substantially all of Westinghouse's assets; and Siemens did not obtain control over Westinghouse as a result of the limited asset purchase.  (*See generally* Doc. #47 at Ex. D).

> 4.    Plaintiffs' Reliance Upon the Collective Bargaining and Other Agreements

Similarly without merit are Plaintiffs' arguments that liability for the PJS benefits exists pursuant to CBS's Collective Bargaining Agreement ("CBA") with Plaintiffs' union, the International Brotherhood of Electrical Workers ("IBEW"), as well as other agreements, which Plaintiffs maintain substantively modify the Westinghouse Plan.  The infirmities with these contentions include Plaintiffs' lack of standing under the CBA,[6] their inability to show any substantive breach of the CBA with respect to the handling of and notice provided regarding benefits, their untimeliness in making a claim for breach of the CBA,[7] and their misreliance upon

---

[6]Plaintiffs lack standing under the CBA as they are not parties to it, and therefore they would only have standing if they were "vindicat[ing] 'uniquely personal' rights of employees such as wages, hours, overtime pay, and discharge." *Samples v. Ryder Truck Lines*, 755 F.2d 881, 885 (11th Cir. 1985).  To the contrary, Plaintiffs are not seeking redress for a uniquely personal right.  *See Guiterrez v. United Foods, Inc.*, 11 F.3d 556, 560 (5th Cir. 1994) (When "a right [is] possessed by a bargaining unit as a whole, only the Union as the sole representative of that unit would normally have the standing to enforce the right.").

[7]A six month statute of limitations applies to claims for breach of the CBA.  *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169 (1983).  Plaintiffs were on notice in August 1998 and again in March 1999 that they would not

and misapplication of the other agreements as a source for PJS benefits that are outside the scope of their ERISA-based claims.[8]  (*See, e.g.*, Doc. #62 at 7-9).

## V.    CONCLUSION

The CBS and Siemens Defendants have met their burden on summary judgment of demonstrating no material factual disputes and entitlement to judgment as a matter of law.  Therefore, the ERISA claims asserted by Plaintiffs are due to be dismissed with prejudice.   The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 29th day of March, 2006.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

_____

be receiving any PJS benefits.  Therefore, when Plaintiffs filed their lawsuit in January 2001, over six months had elapsed from both dates on which their arguable breach claims became ripe.

[8]Plaintiffs attempt unconvincingly to use portions of a Pension Insurance Agreement that forms part of the CBA and the parties' Asset Purchase Agreement ("APA") to modify the Westinghouse Plan to create liability for the PJS benefits. Assuming without deciding that either of those documents is beneficial to Plaintiffs' claim for PJS benefits, neither is a part of the Westinghouse Plan and promises not contained in an ERISA plan document are not actionable under ERISA.  *See Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986) ("By explicitly requiring that each plan specify amendment procedures, Congress rejected the use of informal written agreements to modify an ERISA plan.").